Revka LLC v Principessa Soho LLC (2025 NY Slip Op 50295(U))

[*1]

Revka LLC v Principessa Soho LLC

2025 NY Slip Op 50295(U)

Decided on March 5, 2025

Supreme Court, New York County

Ally, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected in part through March 10, 2025; it will not be published in the printed Offical Reports.

Decided on March 5, 2025
Supreme Court, New York County

Revka LLC, Petitioner,

against
Principessa Soho LLC and COBI LEVY, Respondents.

652026/2023

Petitioner Revka LLC Richard J. Migliaccio, Esq. (richard@assaproperties.com)
410 Park Avenue, Suite 1630 
New York, NY 10022
(212) 239-9900 ext. 40
Respondents Principessa Soho LLC and Cobi Levy
Ihsan Dogramaci, Esq. (idogramaci@dogramacilaw.com)
The Law Office of Ihsan Dogramaci 
20 W. 20th Street, Suite 305 
New York, NY 10011 
(646) 481-6507 

Shahabuddeen Ally, J.

The following e-filed documents, listed by NYSCEF document number, were read on this motion (Seq. No. 2) to/for CONTEMPT: 22-30, 46, 59
The following e-filed documents, listed by NYSCEF document number, were read on this motion (Seq. No. 3) to/for VACATE: 9-11, 31-45, 54, 58, 63-66
The following e-filed documents, listed by NYSCEF document number, were read on this motion and cross-motion (Seq. No. 4) to/for CONTEMPT / STRIKE: 47-57, 60, 68-69
Four motions are currently pending before the Court in this special proceeding.
In the first motion (Seq. No. 2), brought by proposed order to show cause filed on November 22, 2023, petitioner REVKA LLC ("Petitioner") seeks an order, pursuant to Judiciary Law §§ 751, 753, and 773, holding respondents PRINCIPESSA SOHO LLC ("Soho") and COBI LEVY ("Levy"; and, together with Soho, "Respondents") in contempt for their alleged failure to comply with the Court's June 9, 2023 Order (the "6/9/23 Order") requiring Respondents to make Soho's books, records, and financial information available for Petitioner's inspection and copying. (NYSCEF Docs. 13, 22) The Court signed the proposed order to show cause on November 23, 2023. (Id. Doc. 27) Respondents submitted opposition to the motion, and Petitioner submitted a reply. (Id. Docs. 46, 59)
In the second motion (Seq. No. 3), brought by proposed order to show cause filed on February 8, 2024, Respondents seek an order, pursuant to CPLR Rule 5015, vacating the 6/9/23 Order based on Respondents' excusable default and the Court's lack of personal jurisdiction over Respondents. (See NYSCEF Doc. 31; Mem. of Law in Supp. of Resp'ts' Mot. to Vacate Order, dated Feb. 8, 2024 ("Resp'ts' Vacate Mem.") (NYSCEF Doc. 32)) The Court signed the proposed order to show cause on February 9, 2024. (NYSCEF Doc. 54) Petitioner submitted timely opposition to the motion. (Id. Docs. 63-66)
In the third motion (Seq. No. 4), brought by notice of motion filed on February 16, 2024, Respondents seek an order, pursuant to 22 N.Y.C.R.R. 130-1.1, imposing sanctions, in the form of actual expenses reasonably incurred and reasonable attorney's fees, against Petitioner on the ground that Petitioner's contempt motion is based on false allegations of fact. (See NYSCEF Doc. 47; Mem. of Law in Supp. of Mot. for Sanctions, dated Feb. 16, 2024 ("Resp'ts' Sanctions Mem.") (NYSCEF Doc. 48))
In the fourth motion (Seq. No. 4), brought as a cross-motion to Respondents' sanctions motion on March 4, 2024, Petitioner seeks an order striking Respondents' sanctions motion based on alleged procedural and substantive deficiencies. (NYSCEF Doc. 60; Affirm. in Supp. of Cross-Mot. to Strike, dated Mar. 4, 2024 ("Pet'r's Strike Mem.") (NYSCEF Doc. 61)) Respondents filed a reply in further support of their sanctions motion and in opposition to Petitioner's cross-motion. (NYSCEF Docs. 68-69)
The Court heard oral argument on the motions via Microsoft Teams on March 28, 2024. (NYSCEF Doc. 70 ("Tr.")) The motions are consolidated herein for purposes of disposition and, for the reasons discussed below, are DENIED.
[*2]I. Background
Petitioner's manager is Salim Assa ("Assa"), and Soho's manager is Levy. (Verified Pet., dated Apr. 25, 2023 ("Pet.") (NYSCEF Doc. 1), ¶¶ 5, 9) This dispute is primarily one between Assa and Levy concerning the former's investment in the latter's restaurant businesses, Little Prince and Lola Taverna.
Petitioner alleges that it owns a 51% membership interest in Soho, which, in turn, owns and operates Little Prince restaurant located at 199 Prince Street, New York, NY 10012. (Id. ¶¶ 2, 4) While Respondents acknowledge that Assa and Levy entered into an agreement in which Petitioner agreed to purchase a membership interest in Soho, they dispute that the terms of the transaction were ever satisfied, with Assa allegedly having failed to pay the full amount owed under the agreement. (See Affirm. of Cobi Levy in Supp. of Mot. to Vacate Order, dated Feb. 8, 2024 ("Levy Affirm.") (NYSCEF Doc. 35), ¶¶ 11-34)
On April 25, 2023, Petitioner commenced this special proceeding by filing a Verified Petition and a proposed order to show cause. (Pet.; NYSCEF Doc. 5) The Verified Petition alleges causes of action seeking an order requiring Respondents to make certain of Soho's books, records, and financial information available for inspection and copying pursuant to Petitioner's alleged rights under § 8.2 of the Amended and Restated Operating Agreement of Principessa Soho LLC, § 1102(b) of the Limited Liability Company Law, and the common law. (See Pet. ¶¶ 11-26; id. wherefore ¶¶ 1-3)
The Court signed the proposed order to show cause unaltered on May 5, 2023, and it was entered by the clerk on May 10, 2023. (See NYSCEF Doc. 9) The signed order to show cause directed service of the order to show cause and all papers upon which it was based, including the Verified Petition, on Respondents by overnight mail to 199 Prince Street, New York, NY 10012, on or before May 22, 2023. (Id. at 2) Petitioner submitted an affirmation of service and proof of service demonstrating service on Respondents by overnight mail sent on May 10, 2023, and delivered on May 11, 2023. (NYSCEF Docs. 10-11) Respondents' answering papers were due on or before May 31, 2023. (NYSCEF Doc. 9 at 3)
Respondents neither filed answering papers on or before May 31, 2023, nor appeared at oral argument on the application on June 8, 2023. Consequently, the Court issued the 6/9/23 Order on default.
The 6/9/23 Order ordered Respondents to make the following books, records, and financial information available for inspection and copying, at Petitioner's expense, at 199 Prince Street within five business days of the service of the 6/9/23 Order, with notice of entry, upon Respondents by overnight mail:
1) all of Soho's books and records, including all bank account statements and checks, with all backups thereof, for the period of Soho's fiscal years of 2022, 2021, and 2020;
2) access to all "on-line" reporting concerning Soho for Restaurant365, or any other restaurant management software platform that Soho is understood to use and access to Soho's account with any restaurant point-of-sale and management software platform; and
3) to the extent if not otherwise disclosed in connection with the aforesaid, identification of all financial accounts held by Soho at any time during the period of Soho's fiscal years of 2022, 2021, and 2020.
(NYSCEF Doc. 13) Petitioner filed notice of entry of the 6/9/23 Order on June 22, 2023, and served the notice and the 6/9/23 Order on Respondents by overnight mail on the same date. (See NYSCEF Docs. 14-16)
[*3]II. Discussion
A. Respondents' Motion to Vacate
Because a decision in Respondents' favor on their motion to vacate would moot Petitioner's motion for contempt, the Court addresses the motion to vacate first. For the following reasons, the motion is DENIED.
Pursuant to CPLR Rule 5015(a)(4), a court may vacate its own prior judgment or order because it lacked jurisdiction to render the judgment or order. Here, Respondents contend that the Court lacked jurisdiction to render the 6/9/23 Order because the Court did not, and still does not, have personal jurisdiction over Respondents. (See Resp'ts' Vacate Mem. at 21-22) Respondents argue that the order to show cause accompanying the Verified Petition, which the Court signed unaltered on May 5, 2023, only provided for service of the commencement papers on Respondents by overnight mail, which method of service is incompatible with CPLR §§ 308 and 311-a governing, respectively, personal service on individuals and limited liability companies. (See id.)
A special proceeding commenced pursuant to CPLR Article 4 requires (1) a petition and (2) a notice of petition or order to show cause. CPLR §§ 402, 403. The petition is the counterpart to a complaint in a plenary action, and the notice of petition or order to show cause is the counterpart to a summons. David D. Siegel, New York Practice § 553 (6th ed. 2024). Pursuant to CPLR § 403(c), only a notice of petition must be served in the same manner as a summons in an action—e.g., in accordance with CPLR § 308 where the respondent is a natural person and in accordance with CPLR § 311-a where the respondent is a limited liability company. See Harlem River Consumers Co-op., Inc. v. State Tax Comm'n, 44 AD2d 738, 738-39 (3d Dep't 1974) ("Unless the court grants an order to show cause to be served in lieu of a notice of petition at a time and in a manner specified therein, a notice of petition, together with the petition and affidavits specified in the notice, shall be served on any adverse party. A notice of petition shall be served in the same manner as a summons in an action. . . . In the absence of an order authorizing service in a manner other than that provided for by CPLR 403 (subd. (c)), service of the notice of petition and petition by mail upon the State Tax Commission was insufficient to confer jurisdiction over that body." (emphasis added) (internal citations omitted)); Liebman v. Great Am. Ins. Co., 116 Misc 2d 500, 500 (NY Civ. Ct. Bronx Cnty. 1982) ("Unless based on an order to show cause or when there is already a pending action, the notice of petition to confirm an arbitration award must be served in the same manner as a summons in an action." (emphasis added)). An order to show cause filed in lieu of a notice of petition may, however, provide for service by whichever method the endorsing court chooses. See id. § 403(d) ("The court may grant an order to show cause to be served, in lieu of a notice of petition at a time and in a manner specified therein."). The court acquires personal jurisdiction over the respondent if the petitioner serves the order to show cause (along with the commencing petition) in strict compliance with the method specified therein. Here, therefore, the Court has personal jurisdiction over Respondents, and thus had jurisdiction to render the 6/9/23 Order, because Petitioner timely served Respondents by overnight mail in accordance with the signed order to show cause. (See NYSCEF Docs. 10-11)
Respondents' reliance on Molina v. Chladek, No. 651210/2014, 2014 WL 5781422 (NY Sup. Ct. NY Cnty. Nov. 6, 2014), is misplaced. For the reasons just discussed, the Court disagrees with the conclusion reached in that case. Molina, furthermore, misreads the three cases on which it relies. In Stephens v. New York State Executive Board of Parole Appeals Unit, the [*4]Third Department held that service by mail of an order to show cause commencing an Article 78 special proceeding only upon the New York State Attorney General did not comply with CPLR 7804(c) (which provides that the Attorney General be served in addition to a respondent state body) and did not confer personal jurisdiction over the unserved respondent state body. 297 AD2d 408, 409-10 (3d Dep't 2002). Nowhere in Stephens did the Third Department take exception with the fact that the order to show case was served by mail, as directed by the trial court, rather than by personal service. Likewise, in Goldmark v. Keystone & Grading Corp., the First Department, relying on the well-settled principle that "the mode of service provided for in the order to show cause is jurisdictional in nature and must be literally followed," found that personal jurisdiction was not acquired over the respondent because the respondent was not served in accordance with the trial court's directive of personal service. 226 AD2d 143, 144 (1st Dep't 1996) (internal quotation marks and citation omitted). There, too, the First Department did not hold that mail service would have been insufficient if the trial court had directed it. Finally, in In re Country Wide Insurance Co., the First Department found that service of a notice of petition by certified mail was insufficient under CPLR §§ 308 and 403(c). 114 AD2d 754, 754-55 (1st Dep't 1985). Service of an order to show cause pursuant to CPLR § 403(d) was not at issue in that case. Ultimately, it is telling that no other court has relied on Molina and that Respondents were unable to cite any other case supporting their position.
Respondents also move to vacate the 6/9/23 Order under CPLR Rule 5015(a)(1), which provides that a court may vacate its own prior judgment or order based upon the movant's excusable default. "'A defendant seeking to vacate a default under CPLR 5015(a)(1) must demonstrate a reasonable excuse for its delay in appearing and answering the complaint and a meritorious defense to the action.'" Hereford Ins. Co. v. Forest Hills Med., P.C., 172 AD3d 567, 568 (1st Dep't 2019) (quoting Eugene Di Lorenzo, Inc. v. A.C. Dutton Lumber Co., 67 NY2d 138, 141 (1986)). A trial court's "determination to vacate a judgment is a discretionary one." Deutsche Bank Nat'l Trust Co. v. Kirschenbaum, 179 AD3d 407, 407 (1st Dep't 2020) (citing Nash v. Port Auth. of NY & N.J., 22 NY3d 220, 226 (2013)).
Turning first to whether Respondents have set forth a potentially meritorious defense to the Verified Petition, the Court concludes that they have. "The quantum of proof required to prevail [on a motion to vacate a default judgment or order] is not as great as is required to oppose summary judgment." Bilodeau-Redeye v. Preferred Mut. Ins. Co., 38 AD3d 1277, 1277 (4th Dep't 2007) (alteration in original) (internal quotation marks and citation omitted); Madatova v. City of NY, 2020 NY Slip Op. 34236(U), at *6 (Sup. Ct. Kings Cnty. Dec. 18, 2020); Maurice v. Maurice, 39 Misc 3d 1205(A), at *6 (NY Sup. Ct. Kings Cnty. 2013); see also Levy v. N.Y.C. Hous. Auth., 287 AD2d 281, 281 (1st Dep't 2001) (holding movant to less exacting standard because "the issue is raised in the context of a motion to restore, not a summary judgment motion"). Here, Respondents submit an affirmation from Levy describing how his business relationship with Assa came into being and how Assa agreed to purchase an interest in Little Prince but never paid what he owed for that interest under the agreement, along with numerous supporting documents. (See Levy Affirm.; id. Exs. A-J (NYSCEF Docs. 36-45)) Viewing these submissions in light of the less exacting standard applicable to the motion, the Court, in its discretion, finds that Respondents have adequately demonstrated that they have a potentially meritorious defense against Petitioner's claim that it is a member/owner of Soho and thus against Petitioner's claim to be entitled to inspect Soho's books and records.
Notwithstanding that Respondents have a potentially meritorious defense, the Court finds [*5]that they have failed to proffer a reasonable excuse for their default. Whether a movant has demonstrated a reasonable excuse for its default is within the trial court's discretion. Mid-Hudson Props., Inc. v. Klein, 167 AD3d 862, 864 (2d Dep't 2018). Here, both in their submissions on the motion and at oral argument, Respondents concede that their failure to appear and answer the Verified Petition was intentional. In his affirmation, Levy states that he "did not oppose or appear in this proceeding because it would have been unnecessary and inefficient" because he was already willing to provide the information that Petitioner sought. (Levy Affirm. ¶ 39) Respondents' counsel provides the same explanation in Respondents' memorandum of law in support of the motion, writing:
Respondents did not appear in this proceeding because they were already working hard to give petitioner the very relief sought in this proceeding. It appeared to Levy that nothing would possibly be gained by hiring counsel to oppose the petition, since Levy was anyway trying to appease Assa by complying with Assa's demands for information, in the hope of avoiding a wasteful legal battle.
(Resp'ts' Vacate Mem. at 17) During oral argument on the motions, counsel repeated this reason for Respondents' failure to appear, while also confirming that Levy had actual notice of the proceeding:
He [Levy] did become aware of the fact that this proceeding was happening, and he made a reasonable decision not to appear, because as he understood it all that was being sought here was moot already. And that the order that your Honor entered was moot before your Honor even entered it. So he made a decision not to waste money on this.
(Tr. 14:2-8)
The Court finds that Respondents' "excuse" of planning to provide the information that Petitioner sought and wanting to avoid the expense of litigation is not a reasonable excuse warranting vacatur of the 6/9/23 Order. Notably, in their memorandum of law in support of the motion, Respondents fail to cite a single case in which a court held that a party's intentional nonappearance, however justified, was grounds to vacate an order entered against that party on default. Indeed, contrary to their contention, Respondents' voluntary decision not to appear initially and answer in this proceeding because they already planned to provide the sought-after information to Petitioner strikes this Court as reason to have entered the 6/9/23 Order and as good reason to maintain it now.
That Petitioner has raised a meritless res judicata argument based on the 6/9/23 Order in a separate but related plenary action does not alter the Court's calculus. To be sure, the Court's issuance of the 6/9/23 Order upon Respondents' default does not allow for the application of res judicata to the disputed issue of whether Petitioner is a member/owner of Soho. See Rojas v. Romanoff, 186 AD3d 103, 109 (1st Dep't 2020) ("Initially, we find that the default nature of the judgment rendered in the prior declaratory judgment action prevents application of issue preclusion to the instant personal injury action. 'An issue is not actually litigated' for collateral estoppel purposes 'if, for example, there has been a default.'" (quoting Kaufman v. Eli Lilly & Co., 65 NY2d 449, 456-57 (1985))).
B. Petitioner's Motion for Contempt
Petitioner moves for an order of contempt against Respondents pursuant to Judiciary Law § 753, which provides that "[a] court of record has power to punish, by fine and imprisonment, or either, a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, [*6]impeded, or prejudiced."
To support a finding of civil contempt, a movant must demonstrate, by clear and convincing evidence, the following four elements: (1) a lawful order of the court, clearly expressing an unequivocal mandate, in effect when the alleged contemptuous conduct occurred; (2) failure to obey the order; (3) knowledge of the order by the party to be held in contempt (regardless of whether the order was actually served on that party); and (4) prejudice to the movant resulting from the violation. El-Dehdan v. El-Dehdan, 26 NY3d 19, 28-29 (2015) (quoting McCormick v. Axelrod, 59 NY2d 574, 583 (1983)); Town of Southampton v. R.K.B. Realty, LLC, 91 AD3d 628, 629 (1st Dep't 2012).
The fourth factor of prejudice to the movant need not be demonstrated for criminal contempt, however, because "'the right of the private parties to the litigation is not the controlling factor.'" Town of Southampton, 91 AD3d at 629 (quoting Dep't of Envtl. Prot. of City of NY v. Dep't of Envtl. Conservation of State of NY, 70 NY2d 233, 240 (1987)). "'A key distinguishing element between civil and criminal contempt is the degree of willfulness of the subject conduct. To be found guilty of criminal contempt, the contemnor usually must be shown to have violated the order with a higher degree of willfulness than is required in a civil contempt proceeding.'" Id. (quoting Dep't of Envtl. Prot. of City of NY, 70 NY2d at 240). Unlike civil contempt, "criminal contempt must be proven beyond a reasonable doubt." Id.; Rockland Cnty. v. Civil Serv. Emp. Ass'n, Inc., 62 NY2d 11, 16 (1984).
"[C]ourts rarely hold litigants in contempt and the requirements for a finding of contempt are quite onerous." Zervos v. Trump, 171 AD3d 110, 127 (1st Dep't 2019) (citing McCormick, 59 NY2d at 583). For the following reasons, Petitioner has failed to satisfy those requirements and, accordingly, the motion is DENIED.
i. The Parties' Positions and Evidence
In support of the motion for contempt, Petitioner submits only the affirmation of its counsel, Richard Migliaccio, who lists five ways in which Respondents have allegedly failed to comply with the 6/9/23 Order:
(i) Most of the bank statements provided to Petitioner which listed checks (all of statements for 2022 and 2023) did not have copies of the cancelled checks;
(ii) No copies of contracts, agreements, billings, invoices or other documents for which the payments and checks were made were provided to Petitioner;
(iii) Respondents provided no disclosure of other bank accounts opened, used or terminated other than Soho's checking account, although the documents that were produced disclosed transfers with a variety of other accounts; Soho's bank statements for August 2020, September 2020 and April 2022 refer to transactions with account nos. "XXXXXX0058", "XXXXXX7885", "XXXXXX5714", "XXXXXX0893" and "XXXXXX1514".
(iv) Although Petitioner was granted access to Soho's Restaurant365 online software, many of the important accounts were "blocked" and Petitioner could not enter or view any of those items; and
(v) Respondents provided virtually no information as to the calculation and payment of distributions by Soho; there was only a single page containing an email exchange in May 2023 about distributions that had been paid.
(Affirm. in Supp. of Pet'r's Mot. to Hold Resp'ts in Contempt, dated Nov. 22, 2023 ("Migliaccio Affirm.") (NYSCEF Doc. 23), ¶ 7) No documentary evidence of any of these alleged failures, however, is provided.
In opposition to the motion, Respondents submit the affirmation of Eric Messrie ("Messrie"), who avers that, since May 15, 2023, he has been the Director of Finance at Prince Street Hospitality ("PSH"), "which manages the Little Prince restaurant." (Affirm. of Eric Messrie in Opp. to Contempt Mot., Feb. 16, 2024 ("Messrie Affirm.") (NYSCEF Doc. 46), ¶ 1) Messrie avers that Little Prince "use[s] certain software applications to administer [its] financial operations and keep [its] accounts," with the primary application being Restaurant365, a cloud-based application accessible through the Internet by login credential. (Id. ¶¶ 2-3) PSH maintains "all the accounting and bookkeeping information and history" for Little Prince in Restaurant365. (Id. ¶ 4) In fact, according to Messrie, Little Prince's "[e]very financial transaction is recorded" in Restaurant365. (Id.) That includes any transaction in Little Prince's bank accounts, which are connected to Restaurant365 and refreshed daily by PSH's third-party accounting team. (Id. ¶ 5) It also includes checking transactions: "As soon as a check is written, it appears as a transaction in Restaurant365. Later, when the check clears, that information from the bank populates into Restaurant365 and the payment will show as reconciled in Restaurant365." (Id. ¶ 6) Third-party vender Over Easy Office ("Over Easy") is also "required to promptly enter all the detailed payroll information [e.g., names, hours worked, salary, taxes withheld] in Restaurant365 as soon as any payroll is processed." (Id. ¶ 7)
Messrie goes on to provide additional details about how Restaurant365 operates, including reproducing screenshots of each of the specific application screens that he discusses. He avers that the application's home screen lists all of the financial transactions conducted on behalf of Little Prince in a dedicated row for each transaction that displays the associated date, amount, vendor, payee, and other pertinent information. (Id. ¶ 10) Examples of the types of transactions that are recorded and displayed are: (1) invoices; (2) payments; (3) item transfers between Little Prince and Lola Taverna, (4) credit memos from vendors; (5) waste logs noting inventory that was discarded; and (6) journal entries, which are entered manually by PSH's third-party accounting team. (Id.) If a payment was made by check, a column in the relevant payment row shows the check number. Assa, Messrie avers, "has had access to Little Prince's cancelled checks for 2020-2022 through the account at TD Bank." (Id. ¶ 15) If, however, the payment was made by ACH (i.e., electronic payment), the column will display "ACH" instead of the relevant check number. (Id. ¶ 14) When an invoice-transaction row is clicked on the home screen, the user is taken to a new screen displaying details about the invoice, including its number, date, amount, and payment due date, and providing a button that, if clicked, displays a copy of the invoice in another screen. (Id. ¶¶ 11-13)
Details about bank transactions are available in Restaurant365 by clicking on a link on the home screen labeled "Bank Transactions." (Id. ¶¶ 16-17) The resulting screen shows "every deposit and expenditure in [Little Prince's] bank accounts." (Id. ¶ 17) As Messrie mentions previously, "information about bank transactions populates into Restaurant365 automatically through a direct connection between Restaurant365 and the banks." (Id. ¶ 18) The relevant bank account from which the transaction was made is identified in the column "Checking Account." (Id. ¶ 17) The separate "Bank Reconciliations" screen, which is also accessible through a link on the home screen, displays information about PSH's third-party accounting team's monthly reconciliations of the bank accounts, including the date a payment was made and the date the payment "hit the bank," which Messrie avers is the date the check cleared in cases where the transaction was check-based. (Id. ¶ 19)
According to Messrie, Assa has had login credentials to view Little Prince's (and Lola [*7]Taverna's) information in Restaurant365 since April 20, 2021. (Id. ¶ 8) In January 2024, Messrie prepared two videos demonstrating the information available in Restaurant365, and those videos were provided to Assa's counsel on January 25, 2024. (Id. ¶ 28)
As to Assa's complaint that he was unable to view in Restaurant365 certain information about certain transactions, Messrie avers that he immediately requested additional information from Assa when he first raised this complaint in a July 21, 2023 email, but that Assa did not respond until three days later. (Id. ¶ 21) Once Assa did respond, Messrie avers that he "immediately worked with Restaurant365 to resolve the issue." (Id.) Assa was blocked from viewing certain information because, when a transaction was between two entities, the user needed access to both entities in order to view all of the available information. (See id.) Messrie claims that "there were few transactions for which Assa would have had this issue" and that "all the information of any importance about Little Prince was available to Assa in Restaurant365; it was only extra information of no importance to him that he was blocked from seeing." (Id. ¶ 4) Messrie nevertheless offered to pull and provide to Assa any information that he was blocked from viewing, but Assa did not respond to that offer. (Id. ¶¶ 22-23)
Finally, Messrie disputes that the other bank accounts identified by Petitioner's counsel's affirmation are associated with Little Prince. As to bank account number 4347220058, Messrie avers that it "is for an older account in Principessa Soho LLC's name" and "is (and has been) visible to [] Assa in the Restaurant365 software, and all the information for it has been available to him." (Id. ¶ 26) Messrie further avers that, contrary to Petitioner's supposition, bank account numbers 
XXXXXX7885, XXXXXX5714, XXXXXX0893, and XXXXXX1514 are not Little Prince accounts. (Id. ¶ 27) Bank account number 
XXXXXX5714 is for Lola Taverna, "and thus [Assa] has had full access to it." (Id.)
In reply, Petitioner submits an affirmation from Assa. (Reply Affirm. in Supp. of Pet'r's Mot. to Hold Resp'ts in Contempt, dated March 4, 2024 ("Assa Reply Affirm.") (NYSCEF Doc. 59)) Initially, Assa concedes that Respondents have satisfied the second numbered paragraph in the 6/9/23 Order by providing Assa with access to Restaurant365. (See id. ¶ 5) The main thrust of Assa's reply affirmation, however, is that the first numbered paragraph of the 6/9/23 Order required Respondents to provide access to hard copies of Soho's books and records and that providing access to Restaurant365 does not alone satisfy the 6/9/23 Order. (See id. ¶¶ 4-10) Assa asserts that, in November 2023, certain payroll information was not available on Restaurant365 but was only available on the separate software system Paylocity, access to which could not be granted to Assa. (Id. ¶ 12) Assa stresses that "neither I nor anyone else on behalf of Petitioner has formal training in [Restaurant365] or uses it in the ordinary course of business and therefore Petitioner cannot be expected to have fluency in the use of that [s]oftware." (Id. ¶ 6) Assa also asserts that "Respondents do not explain or cite any authority for the proposition that access to a software platform should be deemed a suitable substitute for the court-ordered production of hard-copy records" and complains that the screenshots of Restaurant365 screens reproduced in Messrie's affirmation are "illegible." (Id. ¶¶ 7-8) As for the videos that Messrie created for Assa demonstrating the information available on Restaurant365, Assa labels them "hand-made" and "crude" and accuses Respondents' counsel of behaving like a "15-year old TikTokker" for providing them. (Id. ¶ 12)
During the March 28, 2024 oral argument on the motions, Petitioner's counsel reiterated claims that Respondents have not complied with the 6/9/23 Order by failing to provide Petitioner with hard copies of Soho's books and records. (See Tr. at 4:6-5:11) He also raised for the first [*8]time complaints about Petitioner not being given access to the software programs Paylocity and Over Easy and not being given "time cards, employment agreements, equipment leases, inspection reports, repairing appraised estimates, violations, fines, any guarantees or warranties, any other contracts, [and] any default obligations." (Id. at 5:6-11) Respondents' counsel responded that Restaurant365 was the standard bookkeeping software used in the restaurant industry, that it contained all of Soho's books and records, and that there are no hard copy documents to provide Petitioner: "I mean nobody is keeping books and records in some kind of a physical ledger in a warehouse somewhere. This is not how any business, not a restaurant, not a law firm—this is not how any business in this day and age keeps its books and records. It is done online in the Cloud." (Id. at 17:4-18, 19:25-20:6) Respondents' counsel also reiterated that help was offered to Petitioner and Assa to navigate and use Restaurant365 but that the offer was not taken up. (Id. at 17:18-25) As to Petitioner's access to Paylocity and Over Easy, as well as Petitioner's request for other specific types of documents, Respondents' counsel stated that he had not received the request from Petitioner prior to oral argument. (Id. at 18:1-5, 19:7-20) Finally, Respondents' counsel explained that the only time that there is a gap in payroll information between Restaurant365 and Paylocity is the period each month before payroll is run in Paylocity and then uploaded to Restaurant365. (Id. at 18:5-24)
ii. Petitioner Fails to Demonstrate Contempt
Petitioner's submissions in support of the motion fall far short of meeting its burden to demonstrate, by clear and convincing evidence, that Respondents are currently in contempt of the 6/9/23 Order.
While Petitioner fails to actually discuss any of the elements necessary for a contempt finding in its submissions, its primary argument that Respondents were required by the 6/9/23 Order to provide Petitioner access to hard copies of Soho's books and records implicates the first required element. Specifically, it raises the issue of whether the 6/9/23 Order "clearly express[ed] an unequivocal mandate" that Respondents provide Petitioner access to hard copies. El-Dehdan, 26 NY3d at 29 (quoting McCormick, 59 NY2d at 583). Upon close review of the 6/9/23 Order, nowhere does the Order expressly command Respondents to furnish hard copies of documents. Here, rather, the Court interprets the 6/9/23 Order to mean that Respondents were required to provide Petitioner access to Soho's books and records in the form and manner in which they are kept in the ordinary course of business. Assa may argue that Respondents do not cite any authority providing that a software system like Restaurant365 can substitute for hard copy documents, but, by the same token, Petitioner fails to cite any authority requiring that the language used in the 6/9/23 Order be interpreted as requiring hard copies. Messrie and Respondents' counsel repeatedly state that Soho's books and records are not maintained in physical form but are maintained electronically through Restaurant365. Petitioner has not come forward with any contrary evidence; instead, Petitioner and its counsel repeatedly make conclusory assertions that there must be physical documents maintained that are being withheld from them. The Court credits Messrie's and Respondents' counsel's assertions that the modern method of keeping a restaurant business's books and records is electronically through the industry-standard program Restaurant365, and that Soho in fact uses Restaurant365 in lieu of maintaining physical records. At the same time, the Court does not assign weight to Petitioner's and its counsel's unsupported, conclusory assertions.
To the extent that Assa claims that he is incapable of using Restaurant365 and therefore [*9]Respondents are required to provide hard-copy access, the Court rejects that contention. It is clear that Respondents and their employees and counsel have made efforts to assist Assa with the use of the program to retrieve the information that Assa desires to obtain about Soho, including by making instruction videos for Assa and otherwise offering to obtain and provide information that he might otherwise be blocked from viewing due to certain access requirements in the software, but Assa has unreasonably rejected those efforts. Because the 6/9/23 Order does not unequivocally mandate that Respondents provide hard copies of Soho's books and records, Petitioner cannot demand that hard copies be provided and then take exception when the records are instead provided in the form in which they are actually maintained. If Assa finds Restaurant365 difficult or confusing to use, he should accept Respondents' offers of assistance—offers that, in any event, were not required under the 6/9/23 Order—or otherwise hire a third party with expertise that can assist him.
As for the claims and arguments that Petitioner raised for the first time in reply and at oral argument, the Court does not consider them. See Mulligan v. City of NY, 120 AD3d 1155, 1156 (1st Dep't 2014) (holding that arguments "raised for the first time in . . . reply affirmations" were "not properly before" the court). Petitioner had every opportunity and, more important, an obligation to set forth all of the factual bases for its motion in its moving papers. Even if the Court were to consider Petitioner's new claims, raised for the first time during oral argument, about specific types of documents allegedly being withheld, Petitioner failed to demonstrate that those documents exist and that Respondents are withholding them. Simply asserting that you have not been given certain kinds of documents, as Petitioner's counsel did here, does not establish that those documents in fact exist (or raise a reasonable inference that they do) and are being withheld, purposefully or not, in contravention of a court order. Contempt calls for more than unsupported allegations; it requires a significant measure of proof that, here, Petitioner has simply failed to provide.
In the end, Petitioner's motion is based on conclusory, self-serving affirmations that do not satisfy its evidentiary burden. On the current record, therefore, the Court must exercise its discretion to deny the motion.
Any further disputes about access to Soho's books and records shall first be addressed between and among the parties by meeting and conferring on the issues in good faith. The Court strongly encourages the parties to resolve any such disputes through this method. If, after meeting and conferring, a dispute still remains requiring Court intervention, however, the parties shall first, before filing any motion, file a letter to NYSCEF detailing the dispute, describing the parties' meet-and-confer, and requesting a conference with the Court. The Court will then decide whether to schedule a conference, to be held remotely, to attempt to resolve the dispute without resorting to further motion practice.
C. Respondents' Motion for Sanctions and Petitioner's Cross-Motion to Strike
Initially, Petitioner's cross-motion to strike Respondents' motion for sanctions is not based in any legal authority and is DENIED. The Court treats the cross-motion as opposition to the sanctions motion.
Pursuant to 22 N.Y.C.R.R. 130-1.1, a "court, in its discretion, may award to any party . . . in any civil action . . . costs in the form of reimbursement for actual expenses reasonably incurred and reasonable attorney's fees, resulting from frivolous conduct." Here, Respondents' basis for seeking sanctions against Petitioner is that its motion for contempt is based on false representations of material fact, constituting frivolous conduct within the meaning [*10]of 22 N.Y.C.R.R. 130-1.1(c).
The Court declines to award sanctions in this case, and the motion is DENIED. Petitioner's allegations in the contempt motion are less representations of fact and more arguments concerning whether the information provided, and especially the form in which it was provided, complied with the 6/9/23 Order.
That is not to say, however, that the Court approves of Petitioner's actions in filing the contempt motion. As already stated, any future motions concerning compliance with the 6/9/23 Order must be preceded by genuine, good-faith efforts by the parties to resolve their dispute between themselves, first without Court assistance and then, if necessary, with Court assistance via conference.
Accordingly, it is hereby:
ORDERED that Petitioner's motion (Seq. No. 2) seeking an order, pursuant to Judiciary Law §§ 751, 753, and 773, holding Respondents in contempt for their alleged failure to comply with the 6/9/23 Order is DENIED; and it is further
ORDERED that Respondents' motion (Seq. No. 3) seeking an order, pursuant to CPLR Rule 5015, vacating the 6/9/23 Order is DENIED; and it is further
ORDERED that Respondents' motion (Seq. No. 4) seeking an order, pursuant to 22 N.Y.C.R.R. 130-1.1, imposing sanction against Petitioner is DENIED; and it is further
ORDERED that Petitioner's cross-motion (Seq. No. 4) to strike Respondents' motion for sanctions is DENIED; and it is further
ORDERED that, prior to filing any motion relating to compliance with the 6/9/23 Order, the parties shall follow the procedure set forth herein; and it is further
ORDERED that Petitioner shall serve a copy of this Decision and Order upon Respondents and upon the Clerk of the General Clerk's Office with notice of entry within twenty (20) days thereof; and it is further
ORDERED that service upon the Clerk of Court shall be made in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (Revised August 15, 2019);[FN1]
and it is further
ORDERED that any requested relief not expressly addressed herein has been considered and is denied; and it is further
ORDERED that the Clerk shall mark Motion Sequence Nos. 2, 3, and 4 decided in all court records; and it is further
ORDERED that the Clerk shall mark this proceeding disposed in all court records.
This constitutes the decision and order of the Court.
DATE March 5, 2025
SHAHABUDDEEN A. ALLY, A.J.S.C.

Footnotes

Footnote 1:The protocols are available at 
https://www.nycourts.gov/LegacyPDFS/courts/1jd/supctmanh/Efil-protocol.pdf.